Case number 14-1023, Michael P. Huerta, Administrator, Federal Aviation Administration, Petitioner v. Jody Ducote et al. Ms. Martin for the Petitioner, Mr. Winton for the Respondent. Ms. Martin, good morning. Good morning, and may it please the Court, Dana Martin for the Administrator of the FAA. The NTSB's decision in this case expands the scope of its stale complaint rule in a manner that is not consistent either with the language of the regulation or with the Board's previous precedent applying the rule. The regulation states that the rule does not apply if the complaint alleges lack of qualification. But that's Armstrong, isn't it? I mean, it's following the precedent of Armstrong. Well, that's true. Why didn't you all challenge Armstrong? Well, Your Honor, it's true that the language appears in the Armstrong decision, but the factual context there was different. Every factual context is different. Well, that's true, Your Honor, but the allegations in that case concerned a violation that, while serious But do you challenge the Armstrong standard? We did not challenge it in that case. But you do now. We challenge it as applied in the intentional falsification context presented here. So just as applied. So you have no problem with them, with the NTSB, using that standard? It's just the way they did it here? We did not apply. Since we did not appeal the Armstrong decision, you know, we aren't contesting it. But we do think that to the extent that the Armstrong decision states and holds as a standard, the complaint has to affirmatively demonstrate rather than merely allege. Which is the heart of Armstrong. Right. We disagree with that, Your Honor. But having said that, we thought that it was understandable and something one could live with in the context of a case in which the specificity of the allegations in the complaint would make a difference. How is it consistent with the regulation? It doesn't say anything about demonstration. It just talks about allegations. And look at all the allegations? How in the world is Armstrong consistent with that? Well, we don't think it is, Your Honor. But we think that if you look at the Armstrong, the factual allegations in Armstrong, there the question was whether or not the pilot had the claim was that the pilot had three implied consent violations of motor vehicle laws. And under NTSB precedent, that's a serious violation, but it's not something that inherently shows a lack of qualification. The ALJ in that case held that the administrator had not proved a lack of qualification, and the board and the FAA did not. What do you understand Armstrong to be requiring when it talks about demonstrating that there's a lack of qualification? I mean, as I read it in Armstrong, what they were saying is you need to demonstrate that this is a case in which the pilot, you know, if the allegation is approved, the pilot does not, can't hold the certificate. The ALJ in Armstrong said that the FAA had not proved that and we did not appeal that decision. What do you understand the word demonstrate to mean there? They say demonstrate as opposed to alleging, right? I'm just trying to understand what you think it means. I mean, I'd like to sort of in that case distinguish Armstrong from the present case, because whatever it may have meant in Armstrong, it was much less troubling in that context than this one, where there's nothing additional the complaint could say that would take the case into the qualifications realm. It was already in the qualifications realm. Board decisions have been completely clear that whenever you have an allegation of intentional falsification, that by definition shows a lack of qualification, if you can prove it, of course. But in terms of whether the complaint alleges a qualification issue, intentional falsification, as the board's precedents have said, inherently presents a qualification issue. That was not the case in Armstrong. So whatever that language may have meant in Armstrong, it was much less troubling than it is in this case. And indeed, the FAA hadn't preserved the question of whether or not a qualifications issue was presented in Armstrong, was proved in Armstrong, because we had an appeal. Is there some ‑‑ the fact that you all didn't challenge Armstrong, does that limit us in any way? I don't believe so, Your Honor. If we determine that the rule is inconsistent with the regulation? It does not limit you, Your Honor. I think it ‑‑ It limits you. It limits me. Exactly, Your Honor. But it does not limit you. And we believe that that language, certainly as it's been, in our view, expanded in the Ducote decision before you, is inconsistent with the regulation and can't be sustained. But it gets harder, because if Armstrong is an acceptable interpretation of their regulation, then the step between Armstrong and here is smaller. And if you're accepting that Armstrong is, for purposes of this case, an acceptable interpretation of the regulation, then don't we have to decide the much narrower question of whether Armstrong, applied to your case, is beyond the ‑‑ is too far, an interpretive step too far under this regulation? I mean, I'm not sure it matters too much, Your Honor, because either way it's not acceptable in this context. The way I conceive of it is that the present case illuminates what the board meant when it said demonstrates in Armstrong. In Armstrong, that may have meant simply you have to have allegations that sufficiently state qualifications claim. But in the present case, the allegations did sufficiently state a qualifications claim. Well, maybe they meant not state in the same sense of the show under Iqbal and Pombly. You actually had to go further here. And essentially they're imposing a clarification on what state or demonstrate means. A state is the word of the regulation. What it means, much as show was elaborated in Iqbal and Pombly. And if what they mean is when it comes to demonstrating intentional falsification, you have to do more than say it was intentionally false in your complaint, why would that be beyond the agency's interpretive purview? Well, because, Your Honor, because the regulation simply says present if the allegations present an issue. It doesn't say demonstrate. That came from the board itself, and we think that that's an impermissible extension of the stale complaint rule. So if you look at the allegations of the complaint, you know, it's very specific in terms of what they say was false. The board, the only critique the board had with the specificity of the allegations in the present case was that it said they weren't specific enough as to what was false or what the pilot should have written as law. The point that the complaint here demonstrated the lack of qualification, in a nutshell, that's your point. Yes, exactly. Demonstrate or allege? Well, it alleged in a manner that we think whatever it alleged, the board here said it didn't demonstrate. If the board meant by demonstrate something different than allege or present, you know, we think that that is impermissible under the language of the regulation. We think that even on its own terms it doesn't make sense because the allegations here were sufficiently specific. I'd be happy to answer those. So what do you think demonstrate means? What does Armstrong mean when it says demonstrate? I'm not – I mean, what it meant in Armstrong versus what it means in the present case, there may be a difference, Your Honor, in terms of how – as we read Armstrong, it's distinguishable from the present case because it involved a different type of claim, a claim that was not on its face a qualifications issue, whereas this case is on its face a qualifications issue, so that in Armstrong maybe the complaint – So whatever it means, it was done in this one, right? Yes. I mean, really, you know, it sounds quick, but it's not. You know it when you see it. Well, you know it when you see it because the board – there's this clear line of board precedent going way back that states that even one allegation of intentional falsification is enough. And to the extent the board said that, you know, in previous cases we've been more specific and had more factual detail about the nature of the falsifications, that may be true in certain instances in which it's a complicated matter to figure out what was false and how – you know, what should have been said. That's not the case in a case like this one where, you know, three flights took place, Bahamas, Palm Beach, Palm Beach, Jackson, Jackson, Picayune. That's what actually happened. There's no dispute about that. What the log said was Picayune, Jackson, Picayune, which not only is false, but it manages to conceal a regulatory violation. It's also undisputed here. So the idea that that complaint alleging those facts – But the complaint didn't have all those facts in it. In particular, it didn't have the difference between the two different books that he had, which – and so what I'm trying to figure out is what in the complaint which simply says, here are these dates, those were false, and intentionally so in our view, but doesn't give any context to understand why those were intentionally false. Is that sufficient under, say, an Iqbal standard? I know there's debates about whether that's happening, but if we were to read the agency as simply imposing an Iqbal standard on your complaints, would that be satisfied? It would, Your Honor. If you look at the complaint, Paragraph 9 actually lays out what the flights actually were, and then Paragraph 10 or Paragraph 11 then states what he said occurred. So it's clear that what's missing in the paragraph that says it was false or intentionally false is the information set forth in Paragraph 9. And then Paragraph 12 goes on to say that the flights that were actually taken were taken in violation of FAA regulations. So I think there you have both false, you know, specifically what was false, and you have a basis for reasonable inference that it was intentionally false. That's the part I'm missing. So we certainly got that X happened, Y was written down. Right. That could be just as likely, from purposes of a complaint now, but we can come in later, accidental as intentional. Well, I think that inference is less likely, in fact, than the inference that it was intentional, given the fact that the flights that were not written down and that were, in fact, concealed and a different flight altogether was fabricated and put in the log. They don't use the word fabrication, but they do make clear that the flight that they say occurred, the P.K.M. Jackson flight, never happened. By stating it that way, he concealed the actual regulatory violation, which was flying an international passenger-carrying flight without the appropriate type rating. Now, Iqbal says this is a contextual inquiry. And the context here, this is a highly regulated person, a pilot. FAA precedent is very clear. There's a zero-tolerance policy for falsifying anything. You know, the burden is on him to make sure everything is done correctly. In that context, the idea that that was not enough to state a claim for intentional falsification, which is essentially what the Board is saying now, is incomprehensible, and it leaves the administrator in a state of not knowing what is supposed to be pled. And the intent piece, which I think is what Your Honor is finding the tricky step, is not the step the Board pointed to as problematic here. The Board pointed to the specificity of the allegations, and we think the allegations are sufficiently specific. Can I ask you two procedural questions? Sure. First, did the Solicitor General authorize this appeal, or does the administrator appeal on his or her own once they find significant adverse impact? No, the Solicitor General authorized the appeal, Your Honor. And then what was the status of this case procedurally at the time the Armstrong decision came down from the agency? The Armstrong decision came down just a few weeks before the Board's initial decision in this case. The Board went through the ALJ. It had gone through the ALJ, and then the Board took a look at it, and it came down. So certainly I don't think it was briefed before the Board the first time on the Armstrong standard. We then sought reconsideration, but the Board summarily denied it. It didn't consider the Armstrong. And there were two aspects of Armstrong. One was the sort of pleading standard, and the other was this notion that the stale complaint can be applied at the end of the game rather than the beginning. And I'm a little unclear as to are you challenging both aspects as applied in this case or simply the pleading specificity rule? We're challenging the pleading specificity rule as it's applied here. I mean, we think the ALJ in this particular case got it right the first time. When this was first brought up, there was a motion to dismiss under the stale complaint rule. The ALJ denied it, saying it presents an issue of lack of qualification. So we think it was error then after the ALJ held that it hadn't been proved, which we also allege, by the way, that that was error with respect to count three. It was a mistake to then go back to the complaint and revisit it under this new standard and reach a different result. But was that a mistake because you were applying the new standard or a mistake because, look, this is a threshold inquiry. It's about the status of the complaint itself. Once an ALJ ruling is issued, you don't come back at the end of the process and say you lost on the merits. Therefore, you violated the stale complaint rule. That's right. It's both. It's both. Our primary focus has been on the standard because that's the thing that creates the biggest problem for the FAA going forward. There is some confusion in the board case law about what happens when the administrator fails to prove the qualifications issues after a hearing. Since the rule was amended in 2003, most of the cases say, you know, you don't go back and revisit. Armstrong itself didn't go back and revisit it based on the failure of proof. It went back and looked at the allegations, which we think, if you're going to go back and look at the allegations, that seems odd because there's nothing that the hearing adds to the analysis, and we don't think it makes sense to do it based on the evidence because the rule doesn't, the rule speaks to the allegations only. I want to ask you about count four. It seems to me that the ALJ got it right. It called, or he called it an operational violation. Then somehow, I'm not asking you, you're not defending the NTSB, but you are the agency lawyer. I'm having trouble seeing how the NTSB treated count four because it seems to require, and that's the rating issue, which to me it seems that the NTSB should be charged with the knowledge that he does not have this rating. And yet when you look at the order, the defect in count four is no log books, no evidence presented that he didn't have the rating. I just don't understand how, looking at the last paragraph of the board's order, they talk first about the counts one and three, and then they say concerning the application of the stale complaint rule, which should get rid of four without any regard to specificity, lack of qualifications, or whatever, we carefully reviewed the facts and conclude the administrator's failure to provide specific bases for the allegations in the complaint, he either had the rating or he didn't have the rating, and the NTSB ought to know that, requires dismissing the remaining charge. And then the last sentence of the order is we note that this determination, that is with respect to count four, is limited to the unique facts of this case. So how do you interpret how the board characterized count four, and if it is a lack of qualifications charge, why is specificity, any more specificity needed than to know that the NTSB knows whether this fellow has the rating or not? The way I read the rule, and it's certainly confusing, it was undisputed that there was a regulatory violation as to count four. That was conceded. And I think the reason that the board is talking there about specificity and all of that is because the stale complaint rule talks about the complaint as a whole. If the complaint as a whole presents a qualifications issue, and here, of course, most of the allegations of the complaint concerned intentional falsification. There was just the one operational violation. Then the whole complaint survives. But they keep taking the standalone count four and applying specificity to it. Well, because I think what they're doing, I think they're not looking so much at the specificity with respect to the allegation in count four as to whether or not the complaint adequately pled a qualifications issue so that count four would survive even if the other counts were dismissed, were properly dismissed. And for the reasons stated in our brief, of course, we think that count three was not properly dismissed because the board assumed a credibility finding that the ALJ didn't actually make, and so there's an open factual question on that count. Why isn't count four a qualification issue? He's not qualified to fly the airplane. I'm told by FAA that the presumptive penalty for flying an aircraft without the proper type rating for that aircraft is grounds for suspension, but not ordinarily grounds for revocation of the certificate. And to be a qualifications issue under the board's precedent, it's generally something that means you're not entitled to hold the certificate at all. Generally? Generally. I mean, the regulation just says lack of qualification, and that's... Right, but they define qualification as something that means you're not entitled to hold the certificate at all. I mean, the FAA views it as extremely serious. I mean, that's why we're concerned that count four just gets thrown out here. But you've never challenged that narrow interpretation of lack of qualification under the regulation? No, we haven't, Your Honor. Wow. But we do. I mean, I would add that we think intentional falsification is a particularly serious type of violation, and that's why it's presumptively disqualifying, because the entire FAA scheme depends upon the accuracy and the trustworthiness of the information that pilots, mechanics, everybody who's regulated provides to FAA so that they can determine whether any safety hazards exist, whether the skies are safe, and that's what this is about. Is the hearing before this ALJ a typical hearing? And the reason I ask is there seems to be an unusual amount of solicitude by the NTSB for the pilot, including his going through two grueling hearings. Well, this first hearing is a joke with the ALJ saying, oh, yeah, I've got a granddaughter with a birthday, and I couldn't fly this flight. I mean, is this the standard type of ALJ hearing? I don't think I'm qualified to speak to that, Your Honor. But I mean, we certainly are concerned that the – Based on your experience of reviewing them, is this typical? Yes. It's not entirely surprising to me, Your Honor, but I couldn't speak to the sort of universe of them. But I do – but, you know, certainly we are concerned that the administrators bring serious cases and likes them to be taken seriously. All right. Thank you, Your Honor. Mr. Winton. May it please the court, counsel? Thank you. To answer your question, Judge Henderson, I have been representing Airmen both for the administrator and now against the administrator for the past 25 years. I thought I recognized you. Yeah. I've known Judge Mullins for the 25 years. It was a typical hearing that took place with Judge Mullins. And keep in mind, if you read his decision, which is rendered orally at the end of a full day of evidence, very difficult. We were in New Orleans. It was in July. They shut the air condition off in the courtroom, which was borrowed. I think it was in a tax court building. And they were kicking us out by 6 o'clock in the evening. So could he have spent more time on his detailed analysis of the credibility? Certainly, under the circumstances, I think he did a great job pulling together the evidence and the testimony and assessing the credibility of my client, Jody DeCote. And, again, my name is Greg Winton. I represent the respondent, Captain Jody DeCote, in this matter. We ask that you deny the petition for review and affirm the board's decision in this case. You don't adopt the jurisdictional argument made by Amicus, correct? I do, as a matter of fact. I was going to get to that. And thank you for bringing that up. Was it in your brain? It's not. Well, can you adopt it now, then, if you didn't adopt it in your brain? It's a good question, but I don't think it should be ignored. And if I may speak to that, sometimes we get involved in arguing a position that we can't see the forest through the trees. And, certainly, over the last two and a half years, I was most concerned about winning on the merits in this case, upon which we have prevailed three times over the past two and a half years. The Aircraft Owners and Pilots Association, on behalf of the United States pilot population, adequately briefed the position that standing does not apply here. You know, I've been before this court before. I've never been sitting in this position as a respondent. I have represented over the last ten years approximately nine or ten respondents successfully in revocation hearings. Nine of ten of those have resulted in attorney's fees being granted back to my client, meaning the administrator had no substantial justification to bring those actions. Revocation, the most draconian action that could be taken. So keep in mind, when a pilot who flies professionally, as Mr. Ducote did, has an emergency revocation action taken against him or her, they have to stop flying immediately. Ironically, in this case, Mr. Ducote has not been able to exercise the privileges of his certificate for the past two and a half years, since April 2012. He is eligible to reapply, meaning he can take all the testing again and all the flight tests. However, we feel if he prevails, he will get his certificate back. My point is, without the ability to earn an income, you now have to defend yourself before the law judge, before the board, on a reconsideration. And if now the administrator can bring it to your attention in the Court of Appeals, that means I potentially could have had ten or eleven of these before Your Honor. The respondent just doesn't have the money to pay for that. And, unfortunately, the Equal Access to Justice Act reimburses less than 50% of what my fee is. So it's not feasible. And if you read the whole thing in Judge Henderson's book. Are you trying to figure out how that relates to the jurisdictional argument? Well, this is what I'm going to say. The statute, okay, which gives the administrator the ability, 49 U.S.C. 1153, says if the administrator decides that an order of the board under this section will have a significant adverse impact on the agency's ability to carry out this part, meaning the FAA Act, then the administrator shall be permitted to seek review. If you read the decision, the last line, as Judge Henderson brought up, says, we know this determination is limited to the unique facts of this case. And then we have to square that with the letter from the administrator of the FAA that says, I have determined that the NTSB's decisions will have a significant adverse impact on carrying out the FAA's regulation of aviation safety under its governing statute. If this decision in the Ducote case is limited to the unique facts of this case, it doesn't go beyond Ducote. So how does that affect the administrator? Why is the administrator allowed to bring this to your attention? Well, how are we supposed to, if the solicitor general and the administrator both have determined that an appeal is in the interest of the United States government, how on earth, what standard would this court even apply to disagree with that? Well, I think the decision of the administrator in this letter, dated, I think, 122.14, is reviewable by this court as a final agency order. That's a whole other issue. Whether there really is substance behind the statement that the adverse impact of the Ducote case, which is limited to the unique... But you didn't seek any review on that. I'm sorry? You didn't seek review. I have not, no. I'm concerned about winning this case on the merits. Which, again, the decision of the board, NTSB EA 5664, rendered for Mr. Ducote's position, is limited to the unique circumstances of his case. So getting back to the arguments made by counsel for the government, the board's application of the stale complaint rule certainly is not a conflict with the plain language of the regulation. What do you think the word demonstrates means? Demonstrates means you have to show. You can't just merely allege. And in the numerous cases that I have defended on behalf of my clients against the agency on an emergency revocation, it's just that. They were alleged in the beginning, and when we start to unpeel that onion through discovery and an evidentiary hearing, there is no substance. I thought we were talking about a complaint, though, right? Right, the complaint. How do you demonstrate in a complaint? How do you demonstrate? Oh, certainly through factual allegations with such specificity that I can't do anything about it. If they factually state what has been falsified, then I can't touch that, and I say to my client, we're in a damage control mode, let's settle this case and move on. Certainly there have been those cases. So you see demonstrate just means alleging with the level of specificity. Absolutely. It has to be. So what was missing in this case? What was? With respect to the flights, the falsification of the flight records, what more should this complaint have said? Oh, it was horrific, the way that the complaint was drafted. I didn't even understand what we were being charged with because, keep in mind, the pilot records that he provided to the Flight Standards District Office, pursuant to no less than five- Can we look at the complaint together? Sure. It's January 11th, and so we're just going to talk about the flights on June 10th, right? Right. And so here are the flights that happened. Here are the entries in your logbook. Not the same thing. And by the way, you weren't qualified to fly that airplane. Now, it's not a summary judgment paper. What more would a complaint be required to say? To tell me- To give you fair notice. Sure, that I needed to know what the differences were between what the FAA says I did fly and what I put in my logbook. Okay? It doesn't say exactly which flights were falsely stated, intentionally falsely stated, and which ones were just omitted because an omitted flight is not falsification. So if I forget to write a flight down that I did, it's not false. I'm having trouble. Here are the flights that were taken, DBIJ and MJD. You're looking at paragraph 9? 9 and 10. And then your logbook says different things, MJD, JAN, MJD. So those look like different things to me. What more do you need to know? Because there were two logbooks, okay? So we don't even know which logbook they were from. The flight doesn't talk about two logbooks. It says here are the flights and here's what your logbook said. Right. But I'm reading this with my client, and he looks at his master logbook, which adequately described and recorded these flights the way they should have been. So we're looking at our logbook, and we're looking at the complaint that's saying, this is not false. I did what I was supposed to do. He's not thinking in his mind. So if he only had one logbook, this would be sufficient under your view? And it's the fact that he made that he had one logbook and then made a second one that was different than the first? That's the problem here? Well, the problem here is that we don't know which records they were referring to. Number two, the logbook that he had didn't reflect what the FAA is saying here, and then they made a conclusory statement that the logbook entry listed in paragraph 10 was fraudulent or intentionally false, and that the actual dates and routes of flights were different from those presented in his logbook. If he only had one logbook, Your Honor, his master log, which adequately and factually correctly stated the flights, this wouldn't be an issue. So we didn't know that the FAA was comparing the handwritten supplement that he was asked to provide during his presentation. Surely he knew that his two books were different. He made the second one, right? He made the second one pursuant to the request. So surely he knew if there were differences between the two. I don't know why the administrator has to tell him that you have two different versions. But again, it wasn't intentionally false. It was an omission. Okay, but then that's a different argument. Then you seem to be arguing that I want evidence that it was intentional as opposed to different, which it clearly alleges difference. Is that correct? No, because there's other case law that says omission. And we read this as being an omission. I didn't put in a flight that I should have put. Omission on its face is not sufficient to allege a lack of qualifications for intentional falsification. The Administrator v. Tarassio stands for that back in 2004. That was a case that I won, a revocation, because the FAA said you didn't log maintenance that you were supposed to log. And I said, Judge Mullins again, that's just not logging something. That's not making an affirmative statement that's false. This is different. This isn't omission. When you have a list and then when you recopy it for the government and leave things out, that's a much different type of omission than just not doing something in the first place. It's an omission because, keep in mind, pilot records of flights are not required to be kept by any pilot. I guess the line between an omission and a false statement about where you flew seems to me a fairly unworkable standard. Well, again, if you – I omitted the right one. I put in the wrong one. How is that different than I put in the wrong one? First, I'd like to address, if I may, a misconception that you had when you were asking the counsel about the qualification. Okay. Mr. Ducote, Captain Ducote, was authorized to operate as a second-in-command pilot onboard his Cessna jet aircraft all over the United States. It's when he flies internationally he is required to have a second-in-command type rating. With passengers. With passengers, right. So that is the distinction. I believe it's an ICAO regulation. It doesn't make him any more knowledgeable of the aircraft, any safer. It's a requirement that he have it when he flies out of the country. So not having that type rating for that aircraft during that flight did not mean that he lacked the qualifications to hold a certificate as an airman. So that's the distinction there. So we have to take that out of the equation. Count 4, which we admitted, does not substantiate a lack of qualifications, which gets, you know, the stale complaint rule thrown out. So let's talk about the falsification charges. There were no falsification charges on its face in the complaint that would have substantiated, demonstrated the lack of qualifications, as found by previous case law. And a very interesting thing is that the administrator argues that this is an unworkable solution. If you require us to plead with such specificity in revocation cases, we can't do that. Well, we have a case here. It's NTSB Order EA5727, decided August 12, 2014. Very recent. The law judge found. Is that in your brief or 28-year letter? No, it's brand new. It was not. I can certainly provide copies of it. It's Administrator versus Repetto, R-E-P-E-T-T-O. And again, NTSB Order EA5727, where the law judge found the stale complaint rule did not apply because the administrator's complaint sufficiently alleged a basis for questioning respondents' current qualifications. The board says we agree. You said that just came down when? When did that come down? August 12, 2014. You know, we have provisions for notifying the court of things that are relevant after briefing is closed. Yeah, I don't think it's material to the decision. I think it's just showing that. Why are you using it now? Because I'm trying to show that. Why didn't you bring it to us before? That's the only point I'm making. It came up because of the question I was asking. I'm just saying it's not unworkable. The FAA is working properly. Did the government know you were going to refer to that in argument? I'm sorry? Did you tell the government you might refer to that in argument? No, I did not. Okay. So, again, it's a workable solution is what I'm saying because the FAA is working with it now. And it's not even an argument that was raised during the government's statement today. Did your client ever say during the hearing before the ALJ that he did not intentionally falsify the second logbook? Yes. Where did he say that? Do you have a record site where he said? I did. What was his explanation for the difference in the two logbooks? I think he was just asked the question. He said, absolutely not. Right. I know I asked him. It was one of the last questions I asked him on direct examination if he intentionally falsified that. And he said, no. But did he explain how they ended up being so different? How they ended up being so different? In coincidentally omitting the international flight for which he wasn't qualified? Yeah. No. He just said, no, it wasn't qualified. He just said, yeah. I mean, in fact, this is what happened. He was asked to bring his master logbook, which he did. And the FAA said, wait a minute, make a phone call. We don't know what to do with this. The inspector on the phone said, why don't you summarize it just for the aircraft flights involving 999 Hotel Charlie? And at that point, he submitted it. Then the FAA sent him a letter of investigation about a month later saying, you made an intentional false statement because your statement here is different than the one in your master log. And he responded in writing saying, no, it was merely a mistake. Did he say mistake or an omission? A mistake. He made a mistake and he omitted that flight. But the point was he left both copies of the logbooks with the FAA. Remember, this is not an airman that would, if he were trying to hide that flight, he wouldn't present both logbooks with the obvious distinction staring the FAA in the face. Because keep in mind, I have the benefit of knowing. The ALJ didn't make a finding about this, did it, about falsification? The ALJ. The ALJ. Yes, the ALJ made findings throughout his oral initial decision that he found Mr. Ducote to be credible. But on this issue, the falsification of the logs, the ALJ never reached that, right? Because the ALJ's decision was that the logs were immaterial. There's no finding. The ALJ made no finding about what you're talking about now, right? Right. So you go, is it the logical conclusion that you sent it back to the ALJ to make such a finding? No, not necessarily, because it is always the administrator's burden of proof to prove, by preponderance of the evidence, whether it's circumstantial or otherwise, that there was a false statement that was material with knowledge of the falsity. Yeah, but once the ALJ rules it's not material, the issue's off the table, right? There was no exploration of the very issue we're talking about now before the fact finder, whether the falsification, whether the mistake of the log was intentionally falsified or just an omission. We don't have that determination, do we? Well, the board reviewed the judge's decision. And got it wrong, right? They said there was a finding. There wasn't. That's what I'm trying to ask you to identify for me where the ALJ made a finding about the falsification of the logs. The judge said, I am not finding that it was false. No, I think he said maybe even he intentionally falsified it. Might be false, yeah. Right, but he said, I'm not finding that it is false. But I want to be clear, he very much left open the prospect that maybe even he intentionally falsified that document. So we just don't know. He left open whether the government had satisfied its burden of proof. He didn't resolve that question. And on that ground alone, why doesn't it go back to make that determination? Well, that was the board's decision. So if you send it back to the board, they'd have to send it back to the law judge. I tell you, being in the courtroom without a law judge, you found Mr. Ducote to be extremely credible. So, I mean, right. The board saw beyond that. Why do you even bring that up? We can't do anything with that. You're now testifying as a witness what you think the ALJ would do. We have to go on the record. If you feel it necessary to send it back to the board, have the board send it back to the judge. Help me out of it. I mean, is there a finding? Did the ALJ make a finding about the falsification of the logs? And the answer is no, right? But he made a finding of credibility across the board. He didn't pick and choose and say, I believe the airmen on these logs and not those. I'm sorry, where is that across the board, credibility finding? Well, he found that when this gentleman was alleged with intentional falsification of logbook entries, whether it be the three landings in March or the CESCOM maintenance records, he found them to be credible. As to those two charges? Specifically, again, he was limited in his time in rendering this decision. I'm sorry. I was just trying to clarify. I thought you said that there was an across the board credibility finding, which would be relevant for us to know. Is there an across the board credibility finding? Not explicit. What I'm saying is it's an implicit finding. He did not find him to be not credible in any circumstances, which happens in some cases in these types of administrative hearings. I find the respondent credible in this respect, and I find him not to be credible in some other. And so the board looked at it and said, we don't see that the judge here found any credibility on behalf of this respondent. And we feel that the administrator did not sustain his burden of proof that there was an intentional falsification. There was no knowledge of the falsity, intent to falsify, knowledge of the intent. And for those reasons, we ask that you deny the petition for review and affirm the board's decision and reinstate Mr. Ducote's pilot certificates. Thank you for your time this morning. Does this partner have any time? Okay. Why don't you take a couple minutes? Before we start, I'm very sorry. I had one question, though. There's argument that the administrator will need this Armstrong rule because the administrator will put in qualification allegations that are fairly thin simply to get the rest of the case before the ALJ go forward. And I think your brief even acknowledged that that happened some time. And so can you address why what the agency did here isn't a sufficient check, isn't sufficient to put a check on a process that you acknowledge has had some problems? Well, Your Honor, I think the check was already in the board precedent. I mean, there are cases in which the board has said, we think an intentional qualification claim was added sort of here as an afterthought, and this case is really not about that. It's where qualifications claim was just added on as an afterthought as a way to try to save the complaint. Whether or not that's actually what was going on, I don't know, and I certainly hope not. But the point is the board precedent already made clear that those cases do not survive the stale complaint rule. But that's certainly not what we have here. In this case, the vast majority of the allegations go strictly to the qualifications issue. One point I'd like to make just in response to the argument that just occurred, this is not just an omission case. And the complaint makes that clear. We don't just say that one flight was omitted. The allegations are that he stated that he flew from Pique Un to Jackson, when in fact he flew from the Bahamas to Palm Beach, and then from Palm Beach to Jackson, and then Jackson to Pique Un. So it's a totally, you know, it's a different thing. There's omissions embedded in there, but it's not simply an omission case. Do you agree that omissions do not establish falsification? The Terrasio case does say that standing alone in omission is not enough. Whether in this particular context that would be... All omissions as a categorical rule are not false statements? I'm not sure. I can't speak to the actual scope of the board's decisions on that. I'm not as familiar with them. What I can tell you is that this is not simply an omissions case. But even the board said, notwithstanding previous board cases on the subject of omissions, we disagree with the law judge's conclusion that the falsification charge concerning the log was based solely on a series of omissions. We find instead the inaccurate entries that the pilot made on the log, following the omitted non-revenue flights, were false statements. So whatever the previous board precedent is, in this case they're saying this constituted a false statement. Are you going to answer the jurisdictional point? Yes, Your Honor. In our view, we certainly have jurisdiction. The statute makes clear... The distinction between, as your opposing counsel pointed out, between what the board said here, which said this is fact-bound, just focused on this, and then the certification of the administrator that this has dire consequences for the industry. As I tried to explain in my previous argument, while there is that language in the complaint, it leaves the administrator in a very awkward posture here. We don't know, again, because we don't know what was missing from the intentional falsification charge here. And it was pleaded just as many others have been. I would direct the Court to the Brassington case, which is cited in our brief, which provides an example of another complaint involving falsification, which, again, is pretty summary in how it describes what the falsification was and the intent problem. But having said that, the problem that's created here is it creates a big question mark as to how broad is the qualifications exception to the stale complaint rule, which is something the administrator deems extremely important. And what about the point that your opposing counsel made, that the purpose of this procedure is to make it quick and make these determinations quickly? And here we have an example where it's anything but quick, and you have someone whose livelihood is being held. And we do not take that lightly, Your Honor. But I would say the concern that we would be bringing these cases over and over again is simply not borne out by reality. The last time the administrator brought one of these cases was in 1999. We take this case very seriously. We're very concerned that the administrator's ability to go after cases where it believes that a pilot or mechanic lacks qualification to hold the certificate needs to be preserved. I'm sorry, the last one of these cases, you mean a last qualification case or a last appeal to this Court since 1999? It's the last affirmative petition review that the administrator has brought in one of these cases was in 1999, in a case called Garvey v. NTSB. All right. Thank you very much.
judges: Henderson, Griffith, Millett